Filed 4/24/26  P. v. Letchaw CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>CURTIS ANTONIO LETCHAW,<br><br>    Defendant and Appellant. | D085028<br><br><br><br>(Super. Ct. No. SCE414484) |

APPEAL from a judgment of the Superior Court of San Diego County, Lilys McCoy, Judge.  Affirmed in part, reversed in part, and remanded with instructions.

Laura Arnold, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Arlene A. Sevidal, Assistant Attorney General, Daniel Rogers, Matthew Mulford and Daniel J. Hilton, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted Curtis Antonio Letchaw of felony failing to register as a convicted sex offender (Pen. Code, § 290.018, subd. (b); count 1) and

misdemeanor providing false registry information (§ 290.018(k); count 2). Letchaw was sentenced to four years in prison. He raises three issues on appeal.

First, Letchaw—who exercised his Fifth Amendment right not to testify at trial—argues the trial court prejudicially erred in instructing the jury on CALCRIM No. 361, which concerns a testifying defendant's failure to explain adverse evidence. We agree the court erred in giving an unwarranted instruction but conclude on this record the error was harmless under *People v. Watson* (1956) 46 Cal.2d 818, 836.

Second, Letchaw claims the trial court erred in sentencing him under the Three Strikes law because he did not admit the alleged strike prior. We agree that, given Letchaw never admitted the strike prior on the record, reversal of the true finding on the strike prior allegation is required.

Lastly, Letchaw contends the Felony Minutes—Pronouncement of Judgment dated August 14, 2024 must be corrected to reflect a sentence as to count 2 of 364 days in custody, rather than 365. We accept the People's concession.

We therefore reverse the true finding as to the prior strike allegation and remand to the trial court to (1) hold a hearing on whether Letchaw elects to admit the strike prior allegation or proceed to trial on it and hold further proceedings accordingly and (2) amend the Felony Minutes—Pronouncement of Judgment dated August 14, 2024 to reflect a sentence as to count 2 of 364 days in custody. In all other respects, we affirm.

## I.

In 2012, Letchaw was convicted of a sex crime that imposed a lifetime requirement that he register as a sex offender under Penal Code section 290. Section 290 requires individuals convicted of specified sex crimes to register

2

the address at which they are residing with law enforcement. (§ 290(b).) A person who is transient—defined as "a person who has no residence"—must register every 30 days and "list the places where" that person "sleeps, eats, works, frequents, and engages in leisure activities." (§ 290.011(a), (d), (g).) If a transient person moves to a residence, the person must register that address within five working days. (§ 290.011(b).)

## A.

In late January 2020, Letchaw registered as transient. Letchaw initialed each requirement on the registration form and affirmed he had read and understood them all.

On February 1, 2020, Letchaw called 911 from a residence in San Diego. When law enforcement arrived, Letchaw indicated he had lived at the address for "probably a couple months" and helped pay the rent. He told the detective "he goes between [another] house and this home in San Diego." The detective searched the residence and found men's clothing and medications bearing Letchaw's name in the bedroom in which Letchaw had been staying.

The detective arrested Letchaw for violating his sex offender registration requirements. He reminded Letchaw that he was required to register an address where he was residing within days of moving in.

## B.

On September 21, 2022, Letchaw again registered as transient. He indicated on the registration form that he could be located near an address in downtown San Diego. Letchaw confirmed that he had read all the registration requirements, understood them, and had no questions. He also initialed each requirement and signed and fingerprinted each page of his registration form.

The requirements he initialed included requirement 9, which informs the registrant to re-register within five working days of any move; requirement 12, providing that a person registered as transient has five working days in which to register after moving to a residence; and requirement 17, which indicates that a person who resides at more than one address regularly must register each address within five working days of moving in. On the last page of his registration form, Letchaw affirmed he understood the requirements and had notified the Sex Offender Registration Unit of any changes that needed to be made to his information.

In reality, however, Letchaw had lived fulltime at his girlfriend's residence in an unincorporated part of El Cajon since 2016. Letchaw paid rent and kept his personal belongings—like clothes and composition books—in the residence. He received mail at the address. If Letchaw and his girlfriend were fighting, he would sleep at his son's mother's house in San Diego—the location of the 2020 incident.

On October 5, 2022, Letchaw's girlfriend called 911 and indicated she wanted Letchaw to move out. A sheriff's deputy responded to the residence but left after talking with the girlfriend. He came back several hours later, after Letchaw had returned home, and detained him.

Letchaw's girlfriend also called the probation department. A probation supervisor responded to the residence. Based on Letchaw's many belongings in the bedroom, the probation supervisor concluded Letchaw was residing at the El Cajon address.

The investigating police officer reviewed a law enforcement database showing Letchaw's current registration information and his prior registration violation. He also reviewed photographs of Letchaw's belongings at the

4

El Cajon address. Based on his investigation, the officer concluded Letchaw was residing at that address and was required to register the address.

Letchaw was charged with one felony count of failing to register as a convicted sex offender and one misdemeanor count of providing false registry information. The information further alleged Letchaw had suffered a 1988 prior strike conviction.

C.

At trial, the jury was shown body-worn camera footage of the 2020 incident where Letchaw was arrested for registering as transient despite helping pay rent at an address at which he had been residing for several months. Letchaw elected not to testify. The jury convicted him of both charged counts.

After the jury was excused, the prosecutor raised "the issue of the strike prior allegation." Letchaw's counsel indicated Letchaw "would like to admit the strike." The court informed Letchaw that he was "entitled to a trial on the question of whether [he] suffered the strike" and asked Letchaw if his counsel was "accurate" in saying he was "willing to waive that." Letchaw responded, "Yes, ma'am." At that point, the conversation turned to a potential motion for new trial.

The court then returned to the strike prior, stating: "[J]ust to be clear, with respect to the strike prior, when I said you have a right to a trial, Mr. Letchaw, did you understand what I meant by that in terms of right to call witnesses, cross-examine the prosecution's witnesses, have appointed counsel for free? Did you understand all of that?" Again, Letchaw responded, "Yes, ma'am." The court then stated, "with that, I am going to set sentencing."

The court never elicited Letchaw's admission to the strike prior.

5

D.

Probation recommended the court sentence Letchaw, as to count 1, to the midterm of two years in prison, doubled to four years for the strike prior. Letchaw sought to strike his strike prior and asked the court to sentence him to either probation or the low term of 16 months in prison.

The court denied the motion to strike Letchaw's strike prior. As to count 1, the court selected the midterm of two years in prison, doubled for the strike prior, for a base term of four years. As to count 2, the court imposed but stayed "one year of custody to run concurrently with the term for count 1." The Felony Minutes—Pronouncement of Judgment dated August 14, 2024 indicate Letchaw was sentenced to a term of 365 days in custody for count 2.

II.

A.

Letchaw argues the trial court prejudicially erred by instructing the jury, despite the fact he did not testify at trial, as follows: "If the defendant failed in his testimony to explain or deny evidence against him, and he could reasonably be expected to have done so based on what he knew, you may consider his failure to explain or deny in evaluating that evidence. Any such failure is not enough by itself to prove guilt. The People must still prove the defendant guilty beyond a reasonable doubt. If the defendant failed to explain or deny, it is up to you to decide the meaning and importance of that failure." (See CALCRIM No. 361.)

"It is error for a court to give an 'abstract' instruction, i.e., 'one which is correct in law but irrelevant.'" (*People v. Rowland* (1992) 4 Cal.4th 238, 282.) "'[I]n most cases the giving of an abstract instruction is only a technical error which does not constitute ground for reversal.'" (*Ibid.*) Generally, "[s]uch

6

error does not implicate the defendant's constitutional rights and is subject to harmless error review under" *Watson*. (*People v. Falaniko* (2016) 1 Cal.App.5th 1234, 1247.)

The instruction here was abstract because Letchaw did not testify at all, so he could not fail to explain or deny incriminating evidence during his nonexistent testimony. Thus, the instruction was given in error.

The People contend errors in giving CALCRIM No. 361 may be evaluated under *Watson*. Letchaw, however, claims the instruction amounted to federal constitutional error under *Griffin v. California* (1965) 380 U.S. 609 such that it is subject to the prejudice standard set forth in *Chapman v. California* (1967) 386 U.S. 18, 24. (See, e.g., *People v. Vargas* (1973) 9 Cal.3d 470, 478.)

*Griffin* error occurs when the judge or prosecutor comments on the defendant's right not to testify. In *Griffin*, the court gave the following instruction regarding a non-testifying defendant: "'As to any evidence or facts against him which the defendant can reasonably be expected to deny or explain because of facts within his knowledge, if he does not testify or if, though he does testify, he fails to deny or explain such evidence, the jury may take that failure into consideration as tending to indicate the truth of such evidence and as indicating that among the inferences that may be reasonably drawn therefrom those unfavorable to the defendant are the more probable.'" (*Griffin*, 380 U.S. at pp. 609-610.) "The prosecutor made much of" the defendant's failure to testify, and the defendant was convicted. (*Ibid*.) The U.S. Supreme Court granted certiorari "to consider whether comment on the failure to testify violated the . . . Fifth Amendment." (*Id*. at p. 611.) The court concluded it did, holding "the Fifth Amendment . . . forbids either

7

comment by the prosecution on the accused's silence or instructions by the court that such silence is evidence of guilt." (*Id.* at p. 615.)

Letchaw claims that "[g]iving the instruction in a case such as this, where the defendant did not testify, implicitly comments on the defendant's exercise of his privilege against self-incrimination" and therefore constitutes *Griffin* error. Letchaw thus contends "the trial court permitted the jury to draw adverse in[ference]s based on [Letchaw]'s exercise of his Fifth Amendment right and ensuing failure to explain or deny not only the evidence of the charged offenses, but also the very powerful [Evidence Code] section 1101, subdivision (b) evidence, used by the People to prove knowledge." We disagree.

The instruction in *Griffin*, which expressly directed the jury to use the defendant's refusal to testify as evidence against him, is distinguishable from the instruction here, which by its terms applies only when the defendant testifies—not, as here, when the defendant elects to exercise the defendant's constitutional right to not testify. "We presume that jurors are intelligent and capable of correctly understanding, correlating, applying, and following the court's instructions." (*People v. Acosta* (2014) 226 Cal.App.4th 108, 119.) Letchaw fails to overcome the presumption the jury understood CALCRIM No. 361, appreciated it did not apply to the case, and therefore disregarded it. As we discern no *Griffin* error, we apply *Watson* and determine the erroneous instruction was harmless.

Under *Watson*, an erroneous jury instruction is prejudicial only if "it is reasonably probable [the] defendant would have obtained a more favorable result had the instruction not been given." (*People v. Rogers* (2013) 57 Cal.4th 296, 336.) In making that assessment, we consider the instructions as a whole, the closing arguments, and the jury's findings.

8

(*People v. Larsen* (2012) 205 Cal.App.4th 810, 831.) We also may consider "whether the evidence supporting the existing judgment is so *relatively* strong, and the evidence supporting a different outcome is so *comparatively* weak, that there is no reasonable probability the error of which the defendant complains affected the result." (*People v. Breverman* (1998) 19 Cal.4th 142, 177.) It is the defendant's burden to demonstrate prejudice. (*People v. Triplett* (2020) 48 Cal.App.5th 655, 663.)

We agree with the People that giving CALCRIM No. 361 was harmless on this record. The jury was instructed that it was to "consider the[ instructions] together" and that "[s]ome . . . may not apply." (See CALCRIM No. 200.) The jury was instructed on the beyond-a-reasonable-doubt standard, and, as given, CALCRIM No. 361 reminded the jury that "[t]he People must still prove the defendant guilty beyond a reasonable doubt." Importantly, the jury was instructed under CALCRIM No. 355 that Letchaw "has an absolute constitutional right not to testify" and "not [to] consider, for any reason at all, the fact that the defendant did not testify" or to "let it influence [its] decision in any way." Neither counsel raised CALCRIM No. 361 during closing arguments or commented on Letchaw's failure to explain adverse evidence. And the evidence against Letchaw was strong. Several years before the charged offenses, Letchaw was arrested for registering as transient when he was helping pay rent at an address at which he was staying with some regularity. He then registered as transient days before being arrested *again* for registering as transient despite paying rent at an address at which he was residing. The jury deliberated for less than two hours before finding Letchaw guilty of both charges. On this record, it is not reasonably probable Letchaw would have obtained a more favorable outcome had the jury not been instructed on CALCRIM No. 361.

9

To the extent Letchaw claims the jury may have applied CALCRIM No. 361 to his statements in the body-worn camera footage from the 2020 incident, we are unconvinced. By its terms, CALCRIM No. 361 is limited to a defendant's *testimony*. The jury was separately instructed under CALCRIM No. 358 on how to handle "evidence the defendant made oral . . . statements before the trial." Again, we presume the jury was able to correlate CALCRIM Nos. 358 and 361 and understand which applied to the body-worn camera footage. (*Acosta*, 226 Cal.App.4th at p. 119.)

In sum, the court's error in giving CALCRIM No. 361 was harmless.

## B.

Letchaw argues we must reverse the true finding as to the strike prior allegation because he did not admit the allegation. We agree.

"Whenever the fact of a previous conviction of another offense is charged in an accusatory pleading, and the defendant is found guilty of the offense with which he is charged, the jury, or the judge if a jury trial is waived, must unless the answer of the defendant admits such previous conviction, find whether or not he has suffered such previous conviction." (Pen. Code, § 1158.) The prosecution bears the burden of proving a strike prior allegation beyond a reasonable doubt. (*People v. Frierson* (2017) 4 Cal.5th 225, 233.)

This procedure was not followed here. While Letchaw expressed his *intention* to admit the strike prior, the record shows Letchaw never actually did so. Nor did a jury or the trial court find beyond a reasonable doubt that Letchaw suffered the alleged strike prior. Accordingly, we must reverse the true finding as to the strike prior allegation and remand for the trial court to hold a hearing on whether Letchaw elects to admit the strike prior allegation or proceed to trial on it and hold further proceedings accordingly. (See *People*

10

*v. Strike* (2020) 45 Cal.App.5th 143, 154 [when true finding on strike prior allegation is reversed, "the appropriate remedy is to remand the case to the trial court for a new hearing on the prior strike allegation"].) Given the foregoing, we need not address whether the court's advisements preceding admission of the strike prior were adequate.

C.

Finally, Letchaw contends—and the People concede—that his sentence as to count 2 must be adjusted to 364 rather than 365 days in custody. We accept the People's concession.

"Every offense which is prescribed by any law of the state to be punishable by imprisonment in a county jail up to or not exceeding one year shall be punishable by imprisonment in a county jail for a period not to exceed 364 days." (Pen. Code, § 18.5.) Count 2, providing false registry information, is subject to this 364-day limit on imprisonment. (See § 290.018(k).) Yet here, the Felony Minutes—Pronouncement of Judgment dated August 14, 2024 specify Letchaw's term of imprisonment for count 2 to be 365 days. Under section 18.5, this length of imprisonment is improper. Accordingly, on remand we direct the trial court to amend the Felony Minutes—Pronouncement of Judgment dated August 14, 2024 to instead reflect a term of imprisonment of 364 days on count 2.

III.

We reverse the true finding on the prior strike allegation and remand to the trial court to (1) hold a hearing on whether Letchaw elects to admit the strike prior allegation or proceed to trial on it and hold any further attendant proceedings and (2) amend the Felony Minutes—Pronouncement of Judgment dated August 14, 2024 to specify Letchaw's term of imprisonment to be 364 days for count 2. We otherwise affirm the judgment.

CASTILLO, J.

WE CONCUR:


DATO, Acting P. J.


DO, J.

12